IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| FARMERS INSURANCE EXCHANGE, )<br>TRUCK INSURANCE EXCHANGE, )<br>FIRE INSURANCE EXCHANGE, )<br>MID-CENTURY INSURANCE COMPANY, )<br>and FARMERS NEW WORLD LIFE )<br>INSURANCE  COMPANY )<br>)<br>            Plaintiffs, )<br>)<br>vs. )<br>)<br>THOMAS CALEB ABERNATHY, )<br>21865 Williamsburg Drive )<br>Athens, AL 35613 )<br>)<br>            Defendant. ) | Case No. _____<br><br>JURY TRIAL DEMANDED |

_____

**COMPLAINT FOR INJUNCTIVE RELIEF AND MONETARY DAMAGES**
_____

COME NOW Plaintiffs Farmers Insurance Exchange, Truck Insurance Exchange, Fire Insurance Exchange, Mid-Century Insurance Company and Farmers New World Life Insurance Company (collectively "Farmers" or "Plaintiffs"), and for their Complaint seeking injunctive relief and monetary damages against Defendants Thomas Caleb Abernathy and Cornerstone Insurance & Financial Group, Inc. state and allege as follows:

**PARTIES, JURISDICTION AND VENUE**

1.      Plaintiffs Mid-Century Insurance Company and Farmers New World Life Insurance Company are foreign corporations registered to do business in the State of Alabama.

2.      Plaintiffs Farmers Insurance Exchange, Truck Insurance Exchange and Fire Insurance Exchange are inter-insurance exchanges organized and existing under the laws of the

State of California, have their principal place of business in California and are licensed to do business in the State of Alabama.

3. Defendant Thomas Caleb Abernathy ("Abernathy") is an individual who, upon information and belief, currently resides within the State of Alabama. Abernathy is a former insurance agent of Farmers who previously operated a Farmers insurance agency at 22270-C U.S. Highway 72 East, Athens, Alabama 35613.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367(a). Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Abernathy resides in this District and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

5. Farmers is in the business of selling and servicing insurance policies, including automobile, homeowner's, commercial and life insurance, to customers through exclusive independent contractor insurance agents. *See* Declaration of Bruce Selin (hereafter, "Selin Decl.") attached as **Exhibit A**, ¶ 3.

6. Significant investments have been made in building Farmers' business, reputation and customer relationships through its agency force, which is supported with training, customer service, advertising, promotion and other initiatives. *See* Exhibit A, Selin Decl., ¶ 4.

7. Farmers' independent contractor insurance agents may not promote or sell competitive insurance products from other insurers for all classes and lines of insurance underwritten by Farmers. *See* Exhibit A, Selin Decl., ¶ 5.

8. Farmers' most valuable assets are its relationships with its customers (i.e. policyholders) and its customer information (including premium amounts, type of insurance, and

expirations), which, if made known to Farmers' competitors, would give them a significant competitive advantage against Farmers. *See* Exhibit A, Selin Decl., ¶ 6.

## I. FARMERS' CUSTOMER INFORMATION ARE TRADE SECRETS

9. Farmers has spent a substantial amount of time, labor and capital in developing, maintaining and updating a proprietary database of trade-secret pricing, expirations and other customer information and customer relationships. *See* Exhibit A, Selin Decl., ¶ 10.

10. Farmers' trade-secret customer data is detailed and extensive, far more than just the names or publicly available information of Farmers' customers. Farmers' compiled data includes information relating to those customers' insurance needs, such as the types of insurance coverage, policy limits, claims history, the type of car(s) owned, the details of homes and other insured properties, eligibility for discounts, prospective pricing and the date the insurance policies expire. *See* Exhibit A, Selin Decl., ¶ 11.

11. Farmers' trade-secret customer data also includes other private information about customers, such as their past claims history, employment and financial condition. *See* Exhibit A, Selin Decl., ¶¶ 7, 11.

12. Although certain limited contact information might be publicly available for some Farmers' customers, such as published home telephone numbers, the majority of the information referenced above is not publicly available. Rather, the confidential, detailed customer data gathered and compiled by Farmers and its insurance agency force is available only to Farmers independent contractor insurance agents and a limited number of Farmers' employees. There are no publicly available lists of Farmers' customers. *See* Exhibit A, Selin Decl., ¶ 7.

13. Farmers derives substantial economic value from preserving its customer information as trade secrets. Competitors can far more easily solicit Farmers' customers to

change insurance providers when those competitors unfairly appropriate Farmers' trade-secret customer information. Competitors use that trade-secret customer information to attempt to solicit Farmers' customers without having to make the investment of time, labor and capital that Farmers and its insurance agency force made to compile the information. *See* Exhibit A, Selin Decl., ¶ 8.

14. Farmers has adopted substantial measures to preserve the secrecy of trade-secret customer information by instituting protective measures designed to prevent such information from reaching competitors or any outside third party. *See* Exhibit A, Selin Decl., ¶ 9.

15. Farmers maintains its customer information and policy expirations on a password and user-ID protected system as part of Farmers' Agency Dashboard. As part of that system, Farmers provides independent contractor insurance agents with a "view" in Farmers' Electronic Customer Management System ("eCMS") that is unique to each independent contractor insurance agent and only available for access by that individual insurance agent and a limited number of Farmers employees. The eCMS view provides the insurance agents (and their authorized staff) with limited access to Farmers' customer information. *See* Exhibit A, Selin Decl., ¶ 12.

16. Independent contractor insurance agents are able to create user-IDs for their staff and are directly responsible for ensuring that all staff members abide by the written practices and procedures set forth by Farmers. *See* Exhibit A, Selin Decl., ¶ 12.

17. At the time of termination of an agent's appointment agreement with Farmers, the access to eCMS of that independent contractor insurance agent and his/her staff is terminated, and their user ID and password combination is no longer valid. *See* Exhibit A, Selin Decl., ¶ 15.

18. Farmers protects its confidential trade-secret customer information by requiring each employee or independent contractor insurance agent who will access the data to agree to use Farmers' trade-secret customer information only in the course of his/her employment with Farmers agency and not to divulge Farmers' information to third parties or to use this information in any way detrimental to Farmers. *See* Exhibit A, Selin Decl., ¶ 9.

19. Farmers also protects its trade-secret customer information by issuing and enforcing company policies regarding access to and preservation of confidential customer information and by maintaining copies of those policies on the Agency Dashboard system, the system through which agents are able to access eCMS. *See* Exhibit A, Selin Decl., ¶ 9.

20. Each time an independent contractor insurance agent accesses Farmers' proprietary system through the Agency Dashboard, that user agrees to abide by an additional and separate "Legal Disclaimer" reflecting that this information is "proprietary, confidential and trade secret information of Farmers" and that use of the information "is restricted to the business of Farmers and your Farmers agency." *See* Exhibit A, Selin Decl., ¶ 14.

21. Farmers also periodically reminds its independent contractor insurance agents of Farmers' confidentiality policies via bulletins and other communication.

## II. FARMERS' AGENT APPOINTMENT AGREEMENT WITH ABERNATHY

22. On or about March 1, 2013, Farmers and Abernathy entered into an Agent Appointment Agreement and an accompanying Addendum to Agent Appointment Agreement (collectively hereafter, the "AAA"), whereby Abernathy accepted appointment by Farmers as an agent of and for Farmers in the State of Alabama to sell insurance for Farmers. A copy of the Agreement is attached as **Exhibit B**.

23. Pursuant to paragraph D.1. of the Agreement, it could be terminated at any time, with or without cause, by either Abernathy or Farmers upon three months written notice. *See* Exhibit B, ¶ D.1.

24. Pursuant to paragraph J of the Agreement, Abernathy agreed to certain post-termination obligations as follows:

> 4. For a period of one year following the effective date of termination of this Agreement, to neither directly nor indirectly solicit, accept, or service the insurance business of any policyholder of record in [Abernathy's] Agency as of the effective date of termination, or, at any time otherwise, use confidential information and/or trade secrets following the effective date of termination for any purpose not related to Agent's duties under this Agreement;

*See* Exhibit B, ¶ J.4.

25. Pursuant to paragraph K of the Agreement, Abernathy acknowledged:

> ". . . all manuals, lists and other policy or customer information of any kind (including information pertaining to policyholders and expirations and the expirations themselves) contain trade secret and confidential information of the Companies, and are, and shall, after termination of this Agreement, remain the property of the Companies."

Abernathy expressly agreed he would not retain, use or divulge any trade secret and confidential information of Farmers following termination of the Agreement.

> "Agent agrees such [trade secret and confidential] information will not be used or divulged, directly or indirectly, in any way detrimental to the Companies and will be returned immediately, along with any copies, to the companies upon termination of this Agreement. Agent agrees not to retain the information described in this paragraph, in any form, following termination of this Agreement."

*See* Exhibit B, ¶ K.

**III.    THE TERMINATION OF ABERNATHY'S AGREEMENT WITH FARMERS**

26. On June 27, 2018, Abernathy gave notice to Farmers that effective September 30, 2018, Abernathy was resigning his Agreement with Farmers. A copy of Abernathy's notice letter is attached as **Exhibit C**.

27. On July 30, 2018, Farmers acknowledged receipt of Abernathy's notice of intent to terminate the Agreement and concurred that his Agreement with Farmers would terminate effective September 30, 2018. A copy of Farmers' letter is attached as **Exhibit D**.

28. In accordance with paragraphs J and K of the Agreement, Farmers requested the return of all information relating to Farmers' insureds and reminded Abernathy of the obligations under Paragraph K of the Agreement that for a period of one year following termination of the Agreement, Abernathy was not, either directly or indirectly, to solicit, accept or service the insurance business of any Farmers' policyholder of record in Abernathy's Agency as of the date of termination of the Agreement. *See* Exhibit D.

29. Abernathy's Agreement with Farmers terminated effective September 30, 2018.

**IV.    ABERNATHY'S MISAPPROPRIATION OF FARMERS' CUSTOMER INFORMATION**

30. In June 2018, Abernathy's access of customer information on eCMS for all of the policyholders he serviced for Farmers significantly increased from previous months and was highly unusual for his agency. *See* Exhibit A, Selin Decl., ¶¶ 17-19.

31. During the period October 2017 through May 2018, Abernathy accessed policyholder Billing Summary information on eCMS an average of 69 times per month. However, in June, July and August 2018, Abernathy's access of policyholder Billing Summary information increased to an average of 118 times per month, nearly double Abernathy's normal practice. *See* Exhibit A, Selin Decl., ¶ 18.

32. During the period October 2017 through June 2018, Abernathy accessed policyholder Auto Policy information on eCMS an average of 54 times per month. However, during the period from July through September 2018, Abernathy's average monthly accesses of policyholder Auto Policy information increased approximately 73%, with 110 accesses in September 2018 alone. *See* Exhibit A, Selin Decl., ¶ 19.

33. Abernathy accessed policyholder Home Policy information on eCMS an average of 26 times per month during the period October 2017 through May 2018. However, during the period from June through September 2018, Abernathy's average monthly accesses of policyholder Home Policy information increased approximately 136%, with 78 accesses in August 2018 alone. *See* Exhibit A, Selin Decl., ¶ 19.

34. The Billing Summary and Auto and Home Policy database on eCMS provided Abernathy access to Farmers' confidential, trade-secret customer information about individual policyholders, including customer names, addresses, phone numbers, policy expiration dates, types of insurance (home, auto, boat, etc.), vehicle information, details about the home, and the current premium with Farmers. Through links within the information, Abernathy had access to each individual policyholder's private customer information and prospective premium information. *See* Exhibit A, Selin Decl., ¶ 20.

V.   **A**BERNATHY **B**EGINS **S**ELLING **I**NSURANCE **W**ITH **A** **N**EW **C**OMPANY

35. Abernathy's AAA with Farmers terminated effective September 30, 2018.

36. In or about October, 2018, immediately following the termination of his Agreement with Farmers, Abernathy began working as an insurance agent for Legacy Insurance, Inc., located at 814A Palmer Road, Madison, Alabama 35758 (hereafter, "Legacy").

37. Legacy is owned and operated by Abernathy's former District Manager at Farmers, Matthew Smith.

38. When Abernathy's Agreement with Farmers was terminated on September 30, 2018, he left Farmers with 598 insurance policies in force. By November 2018, the number of Farmers policies in force from Abernathy's former agency had dropped to 527.

39. Upon information and belief, Abernathy has used and or disclosed the confidential and proprietary customer information of Farmers for the purpose of, directly or indirectly, soliciting, accepting, and/or servicing the insurance business of numerous Farmers' policyholders of record with Abernathy's former Farmers agency.

40. Upon information and belief, Abernathy has directly or indirectly solicited, accepted, and/or serviced the insurance business of numerous Farmers' policyholders of record with Abernathy's former Farmers agency.

41. Abernathy's conduct as set forth herein is a direct violation of his obligations to Farmers under the terms and conditions of his Agreement.

42. Farmers has and will continue to suffer irreparable harm as a result of Abernathy's breach of the Agreement and misappropriation of Farmers' trade secret information, including Farmers' customer information and expirations.

## COUNT I
## MISAPPROPRIATION OF TRADE SECRETS
**(18 U.S.C. § 1832, *et seq.*)**

43. Farmers realleges and incorporates by reference paragraphs 1 through 42 as if fully set forth herein.

44. The facts pleaded above constitute actual and threatened misappropriation of trade secrets by Abernathy in violation of the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1832, *et seq*.

45. Farmers' trade secrets, including the contact and confidential pricing, financial and account information of Farmers' customers, are subject to reasonable efforts by Farmers to maintain their secrecy and/or confidentiality. Farmers' customer information is not generally known or available to the public.

46. Farmers' confidential customer information is considered a trade secret under the DTSA because Farmers derives independent economic value from this information not being generally known to the public, the information is not readily ascertainable by proper means by persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy.

47. Abernathy is misappropriating Farmers' trade secrets by failing to return the customer information obtained by him prior to the termination of his Agreement.

48. The economic value of the trade secrets is over $75,000.

49. Farmers faces an immediate threat of continuing irreparable harm, for which Farmers lacks an adequate remedy at law, from Abernathy's ongoing misappropriation of Farmers' trade secret customer information.

50. Unless Abernathy is preliminarily and permanently enjoined from the foregoing conduct, Farmers will be irreparably harmed by:

    a. Disclosure of trade secrets, customer lists, and other confidential information that is solely the property of Farmers and its customers;

    b. Use of Farmers' trade secrets to solicit customers on behalf of competitors and to disparage Farmers and Farmers' services in an attempt to convince Farmers' customers to transfer their business to competitors;

  c. Loss of confidentiality of clients' records and financial dealings, loss of confidence and trust of clients, loss of goodwill and loss of business reputation; and

  d. Potential future economic loss, which is presently incalculable.

51. The threatened harm to Farmers is immediate.

52. Farmers has no adequate remedy at law, as the damage in terms of money for the future loss of the business of its insureds resulting from the conduct by Abernathy cannot be measured or calculated.

53. No damage to Abernathy will result from granting the injunctive relief Farmers seeks. Abernathy can continue to earn a living, but must not use the confidential, proprietary and trade secret information relating to Farmers' insureds.

54. The threatened harm to Farmers is greater should injunctive relief not be ordered in that Abernathy is in violation of the terms of the Agreement, in possession of Farmers' confidential, proprietary and trade secret information, and is continuing to breach the terms of the Agreement by failing to return Farmers' information.

55. The public has an interest in seeing that contractual provisions, including provisions regarding the use and disclosure of confidential, proprietary and trade secret information and non-solicitation, are enforced.

## COUNT II
## BREACH OF CONTRACT

56. Farmers realleges and incorporates by reference paragraphs 1 through 55 as if fully set forth herein.

57. The Agreement (attached as Exhibit B) is an enforceable contract between Farmers and Abernathy, and Farmers has fully complied with all of its terms.

58. Abernathy has breached the Agreement in that he has, among other things, failed and refused to return Farmers' information regarding its insureds upon termination of the Agreement.

59. As a direct and proximate result of Abernathy's breach, Farmers has incurred damages.

60. Abernathy's breach continues to happen, and Farmers has no adequate remedy at law to stop and fully compensate future, continuing losses.

## COUNT III
## VIOLATION OF THE ALABAMA TRADE SECRETS ACT
### (ALA. Code § 8-27-1)

61. Farmers realleges and incorporates by reference paragraphs 1 through 60 as if fully set forth herein.

62. The facts pleaded above constitute actual and threatened misappropriation of trade secrets by Abernathy in violation of the Alabama Trade Secrets Act ("ATSA"), Ala. Code § 8-27-1, *et seq*.

63. Farmers' trade secrets, including the contact and confidential pricing, financial and account information of Farmers' customers, are intended for use in Farmers' trade or business.

64. Farmers' customer information is included or embodied in a compilation of data maintained by Farmers in its proprietary eCMS database.

65. Farmers' customer information is not generally known or available to the public and is not generally known or readily ascertainable by proper means by persons who could obtain economic value from its disclosure or use.

12

66. Farmers' confidential customer information is the subject of reasonable efforts to maintain its secrecy.

67. Farmers derives significant independent economic value from its confidential customer information not being generally known to the public

68. Abernathy is misappropriating Farmers' trade secrets by failing to return the customer information obtained by him prior to the termination of his Agreement.

69. Farmers faces an immediate threat of continuing irreparable harm, for which Farmers lacks an adequate remedy at law, from Abernathy's ongoing misappropriation of Farmers' trade secret customer information.

70. Unless Abernathy is preliminarily and permanently enjoined from the foregoing conduct, Farmers will be irreparably harmed by:

   a. Disclosure of trade secrets, customer lists, and other confidential information that is solely the property of Farmers and its customers;

   b. Use of Farmers' trade secrets to solicit customers on behalf of competitors and to disparage Farmers and Farmers' services in an attempt to convince Farmers' customers to transfer their business to competitors;

   c. Loss of confidentiality of clients' records and financial dealings, loss of confidence and trust of clients, loss of goodwill and loss of business reputation; and

   d. Potential future economic loss, which is presently incalculable.

71. The threatened harm to Farmers is immediate.

72. Farmers has no adequate remedy at law, as the damage in terms of money for the future loss of the business of its insureds resulting from the conduct by Abernathy cannot be measured or calculated.

73. No damage to Abernathy will result from granting the injunctive relief Farmers seeks. Abernathy can continue to earn a living, but must not use the confidential, proprietary and trade secret information relating to Farmers' insureds.

74. The threatened harm to Farmers is greater should injunctive relief not be ordered in that Abernathy is in violation of the terms of the Agreement, in possession of Farmers' confidential, proprietary and trade secret information, and is continuing to breach the terms of the Agreement by failing to return Farmers' information.

75. The public has an interest in seeing that contractual provisions, including provisions regarding the use and disclosure of confidential, proprietary and trade secret information and non-solicitation, are enforced.

## COUNT IV
## BREACH OF FIDUCIARY DUTY

76. Farmers realleges and incorporates by reference paragraphs 1 through 75 as if fully set forth herein.

77. By virtue of his prior status as an insurance agent for Farmers, Abernathy operated as a fiduciary with respect to Farmers' business, owed Farmers the fiduciary duties of loyalty and care and was required to keep the confidential and business secrets of Farmers inviolate.

78. Abernathy has breached his fiduciary duties by engaging in misconduct that served his own self-interests and the interests of others rather than the interests of Farmers and has acted in a manner inconsistent with the best interests of Farmers – to wit, misappropriating the trade secret customer information of Farmers in order to unfairly compete against Farmers.

79. As a direct and proximate result of Abernathy's breach of fiduciary duties, Farmers has incurred damages.

80. The actions of Abernathy were willful and malicious and demonstrate a complete indifference to or a conscious disregard for the rights of Farmers entitling Farmers to an award of punitive damages.

81. Abernathy will continue to breach his fiduciary duties to Farmers unless restrained by this Court.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and against Defendant Thomas Caleb Abernathy as follows:

a. Granting preliminary and permanent injunctive relief enjoining and restraining Abernathy from directly or indirectly soliciting, accepting, and/or servicing the insurance business of any policyholder of record in Abernathy's Farmers Agency as of September 30, 2018 for a period of one year;

b. Granting preliminary and permanent injunctive relief enjoining and restraining Abernathy from using, disclosing or divulging Farmers' customer information, including but not limited to documents or files containing Farmers' confidential customer information, in any way detrimental to Farmers;

c. Ordering Abernathy to return to Farmers all confidential, proprietary and trade secret information belonging to Farmers that is still within his possession, including all information regarding Farmers' insureds in whatever form it may exist;

d. Ordering Abernathy to turn over his computer and external storage devices to Farmers for forensic examination to determine the full extent of his use of Farmers' customer information and to delete any documents containing Farmers' information;

e. Granting Farmers damages for Abernathy's unlawful conduct, including both the profits Farmers lost as a result of any such conduct and any unjust enrichment gained by Abernathy;

f. Granting Farmers exemplary damages; and

g. Awarding Farmers its reasonable attorneys' fees and costs.

        Respectfully submitted,

        *s/ Edward F. Harold*
        Edward F. Harold
        AL Bar No. asb-0669-d55h
        FISHER & PHILLIPS, LLP
        201 St. Charles Avenue, Suite 3710
        New Orleans, LA 70170
        (504) 522-3303 TEL
        (504) 529-3850 FAX

        ATTORNEY FOR PLAINTIFFS